IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 17-cv-01684-CMA

REGINALD AARON HORNBUCKLE,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

_____

**ORDER AFFIRMING DENIAL OF PLAINTIFF'S APPLICATION FOR SOCIAL SECURITY BENEFITS**
_____

This matter is before the Court on appeal of the Commissioner of Social Security's decision denying Plaintiff Reginald Aaron Hornbuckle's application for Social Security income benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–23. The Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). For the following reasons, the Court affirms the decision.

## I. BACKGROUND

Plaintiff was born in 1972, has at least a high school education, and is able to communicate in English. (AR at 33.)[1] Plaintiff had past work experience that required medium to heavy exertion, including work as a hand packager, pallet builder,

---

[1] The Court refers and cites to the Administrative Record in this matter, located at Doc. # 11, as "AR."

combination forklift operator/dockworker, and bakery helper, among other positions. (AR at 32–33.) On May 22, 2014, Plaintiff filed an application for disability insurance benefits under Title II of the Act, alleging that his disability began on January 9, 2014. (AR at 138–39.) Plaintiff claimed his disability was caused by autoimmune disease and interstitial lung disease. (AR at 170.)

On September 16, 2014, the Social Security Administration Regional Commissioner denied Plaintiff's claim. (AR at 83–85.) On October 20, 2014, Plaintiff filed a request for hearing, which the Administrative Law Judge ("ALJ") held on March 22, 2016. *See* (AR at 20.) On May 20, 2016, the ALJ issued an unfavorable decision (the "Decision"). (AR at 20–33.) Plaintiff filed a Request for Review of Hearing Decision/Order to the Appeals Council, which the Council denied on May 16, 2017. (AR at 2–4.) Accordingly, the ALJ's Decision became the final decision of the Commissioner.

When undergoing the five-step evaluation process, the ALJ found at the first step that Plaintiff "has not engaged in substantial gainful activity since January 9, 2014, the alleged onset date." At the second step, the ALJ found that [Plaintiff] "has the following severe impairments: obesity; mild interstitial lung disease/reactive airway disease; right shoulder rotator cuff full thickness tear with retraction and muscle atrophy; grade 2 anterolisthesis, level L4-5; and alcohol abuse/dependence in remission." (AR at 22.) At the third step, the ALJ found Plaintiff not disabled since his impairments do not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. § 404, Subpt.

P, App. 1. (AR at 24.) In anticipation of the fourth step, the ALJ found that Plaintiff has the residual functional capacity ("RFC"):

> to perform sedentary work as defined in 20 CFR 404.1567(a) as he can lift and carry up to 10 pounds, sit 6 hours in an 8-hour workday, and stand and/or walk 2 hours in an 8-hour workday. He cannot reach overhead. He can occasionally climb ramps and stairs, but cannot climb ladders and scaffolds or work at unprotected heights or with dangerous unprotected machinery.

(AR at 25.) At the fourth step, the ALJ found that Plaintiff "is unable to perform any past relevant work." (AR at 31.) At the fifth step, the ALJ found that "jobs exist in significant numbers in the national economy that [Plaintiff] can perform." (AR at 33.)

The ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from May 22, 2014, through [May 20, 2016], (20 CFR 404.1520(g))." (AR at 33.) Relevant here, when determining Plaintiff's RFC, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause [Plaintiff's] alleged symptoms. However [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence in the record…" and did not prove his disability. (AR at 27.)

Plaintiff appeals the ALJ's conclusion that Plaintiff is **not** disabled. He takes issue with the ALJ's assessments of the medical opinions of treating physician Howard Wolf, M.D. ("Dr. Wolf") and consulting physician Kimberlee Terry, M.D., and with the ALJ's valuation of his subjective complaints.

3

## II. STANDARD OF REVIEW

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *Grogan v. Barnhart,* 399 F.3d 1257, 1261 (10th Cir. 2005). Here, Plaintiff does not contest that the ALJ applied the correct legal standards; the sole question is whether the ALJ's Decision is supported by substantial evidence.

Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* at 1262. The district court is "not to reweigh the evidence or try the issues de novo" but should "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id*. The court should determine if the substantiality test has been met, regardless of whether it would have reached a different result based on the record. *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

## III. AUTHORITY

"Disability" is defined in the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment…" 42 U.S.C. § 423(d)(1)(A). The Act further provides that

> "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial work which exists in the national economy..."

4

42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that he is disabled. 20 C.F.R. § 404.1512(a); *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009).

The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled, which is codified in 20 C.F.R. § 416.920(a)(4):

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. …
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. …
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled. …
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. ...
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. ...

At the fifth step, the Commissioner has a limited burden of proof of establishing that work exists in the national economy that a plaintiff can perform, given the plaintiff's RFC, age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c); *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 (10th Cir. 2007).

An ALJ must both identify the weight accorded to the opinion of a treating source and explain the basis for said weight. *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). The ALJ's explanation must be sufficiently specific to make clear to any subsequent reviewers both the weight given to the medical opinion and the reasons therefor. *Id*.

A finding that a claimant is or is not disabled at any point in the five-step evaluation process is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F. 2d 799, 801 (10th Cir. 1991).

## IV. ANALYSIS

### A. Plaintiff's First Issue – Assessment of Howard Wolf, M.D.'s Opinion

Plaintiff argues that, in determining his RFC, the ALJ failed to accord the deferential weight required by 20 C.F.R. § 404.1527(c) to the opinion of his treating physician, Dr. Howard Wolf. (Doc. # 14 at 11-14.) 20 C.F.R. § 404.1527(c)(2)[2] states a presumption that the Commissioner will give "controlling weight" to a treating physician's opinion if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."

On March 19, 2015, Dr. Wolf opined that beginning in September 2013, Plaintiff's capabilities were limited in the following ways: Plaintiff (1) could lift and carry less than ten pounds; (2) could stand and walk less than two hours during a workday; (3) could sit about four hours in a workday; (4) must alternate positions periodically, most notably

---

[2] The Court uses the version of this rule applicable to claims filed before March 27, 2017 because Plaintiff's claim was filed before that date.

6

walk five minutes every fifteen minutes when standing; (5) could occasionally twist, stoop, crouch, climb stairs, and use left foot to operate foot controls; (6) could never climb ladders or use right foot to operate foot controls; (7) would need to lie down three to four times during a work shift; and (8) on average, may miss work more than three times per month. (AR at 446–48). Dr. Wolf identified the medical findings supporting Plaintiff's limitations, including: (1) degenerative disc L4-5 per Plaintiff's MRI, (2) autoimmune disorder, and (3) susceptible to pneumonia and other infections that coworkers might carry. (*Id.*) The Commissioner concedes that, in conjunction, these limitations would render Plaintiff disabled, as he would be unable to work. (Doc. # 15 at 5–6.)

In assessing Dr. Wolf's opinion, the ALJ explained:

> The undersigned thoroughly considered this physician's assessment and opinions and does not find them fully persuasive, according them only partial weight. Dr. Wolf's opinions are not supported by examination signs and findings or any reasonable explanation. It appears that Dr. Wolf has formulated his opinions based at least in part on [Plaintiff's] subjective complaints.

(AR at 30.) The ALJ concluded that the "medical evidence reflects minimally significant findings to support [Plaintiff's] contention that he is 'disabled' and unable to sustain work activity. Nor does it support the medical assessment from primary care provider Howard Wolf, M.D. at Exhibit 8F." (*Id.*) In addition, the ALJ noted that Dr. Wolf began treating Plaintiff **after** the period on which Dr. Wolf opined on Plaintiff's limitations. Thus, the ALJ found that "[f]or these reasons, Dr. Wolf's opinions are found to be neither controlling nor persuasive (20 C.F.R. § 404.1527 and Social Security Ruling 96-2p) and greater weight is accorded to evidence as a whole." (AR at 31.)

Plaintiff contends that the ALJ erred in criticizing Dr. Wolf's reliance on Plaintiff's subjective complaints. Plaintiff also contends that the ALJ erred in interpreting the objective clinical findings that Dr. Wolf made of Plaintiff when determining Plaintiff's RFC, and thereby determined Plaintiff's RFC incorrectly since his RFC is more limited. Plaintiff also contends that the ALJ should have developed the record more regarding his upcoming back surgery.[3] Plaintiff speculates that the Decision might have been favorable to him had the ALJ considered the opinion of Dr. Evans Fernandez, M.D., which Plaintiff submitted to the Appeals Council subsequent to the ALJ's Decision. Last, Plaintiff argues that the ALJ erred by criticizing Dr. Wolf's opinion because it included a one-year period before Dr. Wolf actually treated Plaintiff.

The Court reviews the ALJ's findings specific to Dr. Wolf's medical opinions about Plaintiff to determine their consistency with the ALJ's assessment of Dr. Wolf's opinion. First, regarding Plaintiff's "degenerative disc L4-5 per Plaintiff's MRI," the ALJ found:

> …[N]o evidence of a disorder of the spine resulting in compromise of a nerve root or the spinal cord, with (A) evidence of nerve root compression characterized by neuro-automatic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, or positive straight-leg raising; or (B) spinal arachnoiditis manifested by severe burning or painful dysethesia, resulting in the need for changes in position or posture more than once every two hours; or (C) lumbar spinal stenosis resulting in pseudoclaudication manifested by chronic nonradicular pain and weakness, and resulting in the inability to ambulate effectively, as defined in 1.00B2h. While the record shows that [Plaintiff] has degenerative disc disease of the lumbar spine, examinations show that he can walk without assistance, stand without imbalance, and has no significant neurological deficits. Recent diagnostic imaging of the lumber spine shows maintained lumbar alignment and no dynamic instability (Exhibit 9F, page 5).

---
[3] Soon after the hearing before the ALJ, Plaintiff had surgery to fuse discs L4-5. (AR at 26.)

8

(AR at 24.)  The ALJ also found:

> …[Plaintiff] performs routine activities of daily living including personal hygiene, household cleaning, laundry, meal preparation, driving, and shopping. ... He spends time fishing and collecting car parts that he puts in his pickup so he can sell them to car junkyards or garages (Exhibit 10F, page 21; Exhibit 11F; page 101). … These activities require significant functional exertion and are not consistent with [Plaintiff's] allegations of disabling symptoms and limitations…

(AR at 27.)  The ALJ also found:

> An October 2014 MRI scan of the lumbar spine performed in October 2014 showed degenerative disc disease with anterolisthesis of L4-5 (Exhibit 11F, page 73).  This is consistent with subsequent imaging performed in February 2016 (Exhibit 9F, page 5).  In July 2015, [Plaintiff] reported to Dr. Fernandez that he was active and independent (Exhibit 10F, pages 24-26, Exhibit 11F, pages 104-106).  He denied any joint tenderness or neuropathic type symptoms…

(AR at 30.)

Next, regarding Plaintiff's "autoimmune disorder, and susceptibility to

pneumonia," the ALJ found:

> [Plaintiff's lung disease] is established with exams and diagnostic findings, including some exams showing coarse breath sounds with occasional crackles.  However, the bulk of medical evidence shows that [Plaintiff] has normal respiratory effort, within normal oxygen saturation levels, and indications that this condition is stable (Exhibits 1F, 3F, 4F, 7F, 10F, 11F).  Repeat pulmonary function testing show mild findings and only low normal volumes with no airflow limitation (Exhibit 4F, pages 8-9; Exhibit 7F, pages 15-16, 37; Exhibit 11F, page 143).  Despite his testimony that he has debilitating coughing spells that can last all day, he informed his treating physician in early 2016 that the coughing does not interfere with his quality of life (Exhibit 10F, pages 11-12; Exhibit 11F, pages 85-86).  In March 2016, [Plaintiff] denied any cough or shortness of breath (Exhibit 10F, page 4).

(AR at 24–25.)  In addition, the ALJ found:

> …Treatment records show that [Plaintiff] has no significant complications stemming from his pulmonary condition.  Despite complaints of shortness of breath and coughing attacks, examinations show that he is rarely, if ever, in respiratory distress.  Clinical oxygen saturation levels have remained within normal limits.  Walk oximetry testing showed oxygen saturation levels were

> mostly in the high 90s (Exhibit 7F, page 48; Exhibit 11F, pages 111, 154). In May 2014, he reported walking 1-2 miles before becoming short of breath (Exhibit 5F, pages 9-12, 29-32; Exhibit 7F, pages 22-25)…Later, in December 2014, notes show that he reported being quite active without any limitations at home or outdoors (Exhibit 10F, page 30). … Multiple pulmonary function tests show a restrictive process, but no airflow limitations and overall "mild" findings (Exhibit 4F, pages 8-9; Exhibit 7F, pages 15-16, 37; Exhibit 11F)… When seen in October 2015, [Plaintiff] reported that his cough had significantly improved (Exhibit 10F, page 14). In January 2016, he stated that his cough pattern was unchanged and did not interfere with his quality of life (Exhibit 10F, page 11; Exhibit 11F)…

(AR at 27.) Last, the ALJ also found:

> …At a May 2014 follow-up visit with Dr. Fernandez…An examination showed…oxygen saturation of 97% on room air. [Plaintiff] appeared comfortable and in no distress. He had no symptoms of a chronic or interfering cough. His lungs did have coarse breath sounds and crackles. A walk oximetry on room air was normal (Exhibit 7F, page 48; Exhibit 11F, page 154). A spirometry report was suggestive of a restrictive process, but FVC ratios and a DLCO were not of listing level severity (see Exhibit 7F, page 37; Exhibit 11F, page 143).[4]

(AR at 29.)

The ALJ's findings from the record evidence demonstrate that Dr. Wolf's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with the other substantial evidence in the record" necessary for the ALJ to accord it controlling weight. *See* 20 C.F.R. § 404.1527(c)(2). As required of an ALJ when he or she does not accord a treating physician's controlling weight, the ALJ next applied the six "factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of [20 C.F.R. § 404.1527], as well as the factors in paragraphs (c)(3) through (c)(6)" to determine the weight to give Dr. Wolf's opinion. Based on the relevant four factors described below, the ALJ determined Dr. Wolf's opinion to be neither controlling nor

---

[4] The Court understands the FVC ratio to be the proportion of a vital capacity that a person can expire and the DLCO is the extent to which oxygen passes from the lungs to the blood stream.

10

persuasive and accorded greater weight to the evidence. The ALJ applied these factors to the evidence of record as follows:

> (c)(2)(i) - Length of the treatment relationship and the frequency of examination. The ALJ noted that Dr. Wolf's "indication that the opined limitations first began in September 2013 is inconsistent with the date Dr. Wolf began treating [Plaintiff]… treatment records at Exhibit 11F do not go back to September 2013." Dr. Wolf's apparently oldest record of any treatment of Plaintiff is dated 9/25/2014. (Doc. # 11-11 at 49). While Plaintiff contends that the ALJ's application of this factor constitutes error, the Court observes that such application is merely compliance with this authority,
>
> (c)(2)(ii) - Nature and extent of the treatment relationship. Most relevant to this factor is the "testing the source has performed or ordered from specialists and independent laboratories." As noted above, the ALJ relied significantly on the fact that the testing of Plaintiff did not support his alleged disability,
>
> (c)(3) – Supportability. Most relevant to this factor is Dr. Wolf's presentation of "evidence to support a medical opinion, particularly medical signs and laboratory findings," which the ALJ found did not support Plaintiff's alleged disability, and
>
> (c)(4) - Consistency. As the ALJ described in assessing Dr. Wolf's opinion, the medical evidence of record did not "support the medical assessment from primary care provider Howard Wolf, M.D."

(AR at 31.) Factors (c)(5) and (c)(6) are less applicable to the ALJ's assessment of Dr. Wolf's opinion but they do not advance Plaintiff's contentions herein.

Plaintiff's evidence from Dr. Fernandez does not show a reasonable probability that it would change the outcome of the decision. *See* (AR at 1–2.) Plaintiff contends that a reasonable possibility exists that the ALJ would have issued a different decision had she been able to review Dr. Fernandez's June 2016 Physical Medical Source Statement. Plaintiff relies on Dr. Fernandez's response of "Progressive disease, not very good" in the category designated "Prognosis" as evidence that the ALJ erred. (AR at 6–10.) However, Dr. Fernandez's Statement also includes his response that Plaintiff

11

"Is capable of low stress work" to the query "To what degree can the patient tolerate work stress?" (AR at 9). Hence, Dr. Fernandez's opinions are not categorically supportive of Plaintiff's contention.

The ALJ also cited objective medical evidence received previously from Dr. Fernandez that contradicted Plaintiff's alleged disability, including:

> …At a May 2014 follow-up visit with Dr. Fernandez…An examination showed…oxygen saturation of 97% on room air. [Plaintiff] appeared comfortable and in no distress. He had no symptoms of a chronic or interfering cough. His lungs did have coarse breath sounds and crackles. A walk oximetry on room air was normal (Exhibit 7F, page 48; Exhibit 11F, page 154). A spirometry report was suggestive of a restrictive process, but FVC ratios and a DLCO were not of listing level severity (see Exhibit 7F, page 37; Exhibit 11F, page 143).
> … In March 2015, Dr. Fernandez found [Plaintiff] was doing relatively well. ... In July 2015, [Plaintiff] reported to Dr. Fernandez that he was active and independent. … He had normal strength throughout and a 96% oxygen saturation level on room air. A walk oximetry was normal. (Exhibit 11F, page 111). Although a chest CT showed mildly increased fibrotic changes (Ex 10F, page 67-68), [Plaintiff] reported that he was feeling better and still only using oxygen at night…

(AR at 29–30.) This objective medical evidence is readily more persuasive than Dr. Fernandez's subsequent, subjective prognosis on which Plaintiff now contends that the ALJ erred.

Thus, the Court concludes that the ALJ did not err in her assessment of the opinion of Dr. Wolf as neither controlling nor persuasive because her assessment is supported by substantial evidence in the record.

### B. Plaintiff's Second Issue - Assessment of Kimberlee Terry, M.D.'s Opinion

Plaintiff argues that the ALJ erred by assessing greater weight to the September 2013 opinion of non-examining, consulting Dr. Kimberlee Terry than he assessed to the

opinion of Dr. Wolf.  Plaintiff contends that the additional records that he produced after Dr. Terry rendered her opinion essentially invalidated Dr. Terry's opinion, thus requiring the ALJ to accept Dr. Wolf's opinion.

Dr. Terry "concluded in a physical assessment that the evidence supported an opinion that [Plaintiff] is essentially capable of performing work activities at the light exertional level.  *See* (AR at 31.)  The ALJ assessed Dr. Terry's opinion as follows:

> Overall this opinion is supported by the medical evidence of record showing minimal deficits in functioning.  Because the opinion evidence from this State agency physician is supported by a review of the medical evidence of record and by the medical signs and findings, and the fact that this opinion comes from a specialist with knowledge of Social Security Administration policies, the undersigned has accorded it some weight.  However, giving [Plaintiff] the maximum benefit of the doubt, and also considering the severe impairments supported by the record, the undersigned has further restricted [Plaintiff] to sedentary exertion, as found in the [RFC] set in this decision.

(*Id.*)

Plaintiff's argument regarding Dr. Terry's specific opinion is not persuasive.  First, as Plaintiff argues, the ALJ discounted Dr. Terry's opinion by assessing it only "some weight" and in finding Plaintiff's impairments to be "severe" based on the evidence of record.  However, this dynamic does **not** vest Dr. Wolf's opinion with controlling weight.  As described above, 20 C.F.R. § 404.1527 governs the process through which the ALJ assesses his opinion.  Consistent therewith, the ALJ assessed Dr. Wolf's opinion, not relative to Dr. Terry's opinion but, relative "to evidence as a whole," to which she gave greater weight.

Thus the Court concludes that the ALJ did not err in assessing "some weight" to Dr. Terry's opinion or in assessing Dr. Wolf's opinion to be neither controlling nor persuasive as these assessments are supported by substantial evidence in the record.

**C. Plaintiff's Third Issue – Assessment of Plaintiff's Complaints**

Plaintiff argues that the ALJ should have accepted his claim that his symptoms are disabling, in spite of the ALJ finding his alleged symptoms inconsistent with his daily activities. Plaintiff contends that he consistently stated that he could perform daily activities but only at a limited pace, which does not constitute the ability to engage in substantial gainful activity. Plaintiff also contends that the ALJ erred because he relied on expert opinions from the vocational expert, which were premised on evidence that the ALJ misinterpreted, to conclude that Plaintiff could perform jobs that exist in the national economy.

Plaintiff effectively requests that the Court reverse the ALJ because the evidence in the record is mixed. Plaintiff relies on his own testimony that he cannot perform a job and is thus disabled. However, the ALJ based her Decision on both the medical evidence **and** on Plaintiff's subjective complaints. As described above, the ALJ noted that the medical evidence does not support the alleged severity of Plaintiff's limitations. Equally important, the ALJ noted evidence from Plaintiff himself that also does not support the alleged severity of his limitations. The Court cites as examples, Plaintiff's statements of early 2016 that "coughing does not interfere with his quality of life" and that he has no "cough or shortness of breath," and Plaintiff's reports of 2014 that he walked "1-2 miles before becoming short of breath" and "being quite active

14

without any limitations at home or outdoors." (AR at 25, 27.) Not only does some of Plaintiff's personal evidence contradict his alleged disability, it does not bring the ALJ's hypotheticals to the vocational expert into question.

Plaintiff effectively requests that the Court decide the case differently than the ALJ's Decision based on disputed evidence, which exceeds the Court's role herein. *Ellison v. Sullivan*, 929 F. 2d at 536. Instead, the Court concludes that the ALJ did not err in assessing Plaintiff's subjective complaints as not establishing his disability as her assessment of them is supported by substantial evidence in the record.

## V. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Final Decision of the Commissioner of Social Security.

DATED: March 19, 2018

BY THE COURT:

*[signature: Christine M Arguello]*

_____
CHRISTINE M. ARGUELLO
United States District Judge